IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT EDWARD TWYMAN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RWT-09-2272 |
| OFFICER CERNY | * | |
| Defendant | * | |

\*\*\*
### MEMORANDUM OPINION

Pending is Defendant's Motion for Summary Judgment. Paper No. 7. Plaintiff was advised of his right to file an opposition to the motion, but has failed file anything further. Paper No. 8. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2009).

**Background**

Plaintiff claims that on December 7, 2008, at 1:30 a.m. he was confronted by a group of men outside of the Zodiac Grill in Gaithersburg, Maryland. Paper No. 1. He states the confrontation became physical when he was assaulted by one of the men confronting him. He claims that Defendant "came out of nowhere" and "tasered" him without first identifying himself as a police officer. Plaintiff further claims Defendant twisted his arm "with much force" and still had not identified himself as a police officer. Plaintiff alleges Defendant used the taser on his neck until he became unresponsive. Plaintiff claims the taser was used five times and caused him undue pain.

Defendant states he is employed by the Montgomery County Department of Police and on the date in question was working as an off-duty police officer for the Zodiac Grill. His job

required him to sit in a police cruiser outside of the bar to deter criminal activity outside the bar. On December 6 and 7, 2008, Defendant worked from 10:30 p.m. to 3:30 a.m.  Paper No. 7 at Ex. 1.  Defendant was dressed in his full, departmentally-issued police uniform, armed with his service revolver and a taser. Id.

At approximately 1:30 a.m. Defendant was told by one of the bouncers employed by the Zodiac Grill that a group of individuals were involved in a fight a short distance down the street from where Defendant was parked. Id. Upon arriving at the location of the fight, Defendant saw approximately 8 men involved in a violent physical altercation about 50 feet from where he was standing. Id.  Defendant also observed approximately 15 to 20 people watching the fight.  Id. Because Defendant was on the scene alone and surmised that the people involved in the melee were most likely intoxicated, he did not attempt to intervene on his own, but called for police backup using his handheld radio.  Id.

After calling for backup, Defendant observed Plaintiff, who was approximately 7 to 10 feet away and separate from the larger melee, jump on top of an unknown man. Id.  Plaintiff began punching the man repeatedly.  Id.  Defendant became concerned that Plaintiff was going to cause the unknown man serious injury by smashing his head into the pavement.  Id.  Since the assault only involved Plaintiff and the unknown man and there was a danger of serious harm to the victim of Plaintiff's assault, Defendant intervened.  Id.  Defendant shouted, "police, get off" as he pulled out his pepper spray with a plan to use it on Plaintiff to stop his assault.  Id. Defendant decided not to use the pepper spray because he was concerned that it could accidentally spray one of the many bystanders or could end up incapacitating the wrong person. Thus, Defendant decided to use the taser gun on Plaintiff from a distance of 7 to 10 feet. Defendant struck Plaintiff with the taser in the upper left shoulder area.

After being tased, Plaintiff ran a short distance into the street and said "you tased me." Id. Defendant responded that he had done so and that Plaintiff was under arrest; Defendant then ordered Plaintiff to put his hands behind his back. Id. Defendant approached Plaintiff and attempted to pull his left hand behind his back to handcuff him. Id. Rather than cooperate with the arrest, Plaintiff began spinning left, twisting his body and physically resisting Defendant's efforts to get his hand behind his back to be handcuffed. Id. During the struggle, Defendant noticed that Plaintiff smelled strongly of alcohol and appeared to be intoxicated. Id. Defendant warned Plaintiff that if he continued to resist arrest he would get tased again, but Plaintiff did not relent. Id.

Defendant states that during the struggle he was concerned that Plaintiff could grab his service revolver and use it against him and that he could become a target for assault by other intoxicated people on the scene if they noticed him struggling with Plaintiff. Id. Accordingly Defendant "drive-tased" Plaintiff on the right side of his neck in an effort to gain his cooperation.[1] Plaintiff immediately fell to the ground face down and said, "you got me. You got me." Id. Plaintiff then placed his hands behind his back and Defendant handcuffed him. Defendant states that Plaintiff was never rendered incoherent, non-responsive, or unconscious, nor did he sustain any visible injuries. Id. Defendant further states that Plaintiff did not ask for medical attention and did not state that he was injured. Id.

Officer Brian James arrived on the scene in response to Defendant's call for police assistance and observed Defendant with Plaintiff who was, by that time, handcuffed. Paper No. 7 at Ex. 2. Officer James also observed approximately 100 individuals loitering in the street outside the Zodiac Grill. Id. After speaking with Defendant, Officer James began efforts to keep

---

[1] Drive-tase or drive-stun refers to the use of a taser by placing the weapon directly against the subject's body and discharging the gun without deploying the projectiles.

3

the crowd away from Defendant. Id. He was approached by a man and woman who made it known to him that they were with Plaintiff that evening; Officer James tried to keep Plaintiff's acquaintances away from him. Id. Defendant placed plaintiff into the police cruiser and transported him to the Central Processing Unit to prepare the statement of charges. Id. Plaintiff was charged with disorderly conduct and resisting arrest. Id. While en route to the Central Processing Unit, Plaintiff never indicated that he had physical injuries or required medical assistance. Id. After Plaintiff had been at the Central Processing Unit for approximately 30 minutes, Officer James was notified by a correctional officer the Plaintiff was complaining about pain in his side. Id. Officer James proceeded to the holding area and was present when Plaintiff indicated he felt some pain under his left armpit and rib cage area. Id. When Plaintiff lifted his shirt, Officer James noticed a taser probe in that area which was removed by the on-site nurse. Id. Upon further investigation, it was discovered that Plaintiff had a second probe attached to his upper right back, which was also removed by the nurse. Id.

A download of the data contained on Defendant's taser indicates that it was discharged two times on December 7, 2008. Paper No. 7 at Ex. 1. The first discharge was at 1:16:24 a.m. and the second was at 1:17:19; each discharge lasted for the standard five seconds. Id.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc., 840 F.2d 236, 240 (4th Cir. 1988).

## Analysis

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. See Graham v. Connor, 490 U. S. 386, 395 (1989); Orem v. Rephann, 523 F.3d 442, 445-6 (4th Cir. 2008). This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner,

471 U.S. 1, 8 (1985) (citation omitted).  Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee.  See Graham, 490 U.S. at 396.  The determination is to be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id; see also Abney v. Coe, 493 F.3d 412 (4th Cir. 2007) (holding "Fourth Amendment reasonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight.")  Further, the right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody.  See Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988). "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm."  Elliot v. Leavitt, 99 F.3d 640, 641 (4th Cir. 1996).  Moreover, the use of force in preventing the escape of a dangerous suspect is constitutional.  Garner, 471 U.S. at 11.

The undisputed evidence presented by Defendant establishes that the force used was reasonable under the circumstances.  Defendant was the only officer present in a near riot situation, and Plaintiff was engaged in a vicious attack on another person.  The danger of the situation required Defendant's use of force against Plaintiff to protect the victim of the assault and ensure Defendant's safety as well as the safety of numerous bystanders.  Defendant is entitled to summary judgment in his favor.  A separate order follows.

|  |  |
|---|---|
| March 23, 2010 | /s/<br>ROGER W. TITUS<br>UNITED STATES DISTRICT JUDGE |